IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ALEXANDER E. COLES, III and CONSUELLA PETTY-JUDKINS, ) ) ) ) Plaintiffs, ) ) v. ) ) DELAWARE RIVER AND BAY AUTHORITY, ) ) ) Defendant. ) ) | C. A. No. 08-636 (GMS) |

**MEMORANDUM**

## I.   INTRODUCTION

On September 30, 2008, the plaintiffs, Alexander E. Coles ("Coles") and Consuella Petty-Judkins ("Petty-Judkins"), filed a complaint against the Delaware River and Bay Authority ("DRBA") seeking injunctive relief and alleging, among other things, that the DRBA's post-termination hearing process is inconsistent with procedural due process. On that same date, pursuant to Federal Rule of Civil Procedure 65, the plaintiffs filed a motion for a preliminary injunction (D.I. 3) seeking neutral decision makers as hearing officers for their post-termination hearings and an order directing the DRBA to respond to their September 2, 2008 request for further information. For the reasons that follow, the court will deny the plaintiffs' motion for injunctive relief.

## II.    FACTS

The following facts are taken from the plaintiffs' complaint and the parties' briefs.

### A.    The DRBA and its Authority

The legislatures of New Jersey and Delaware created the DRBA through a bi-state compact pursuant to the Compact Clause of the United States Constitution.  Pub. Law 101-565, Nov. 15, 1990; Del. Code Ann. tit. 17, § 1701 (the "Compact").  The purposes of the DRBA are to advance Delaware's and New Jersey's economic development, and to improve the flow of traffic between the two states.  Del. Code Ann. tit. 17, § 1701.  Toward that end, the DRBA operates, among other facilities, the New Castle Civil Air Terminal Airport.  *See* http://www.drba.net.

Pursuant to its authority under Article VII of the Compact, the DRBA is granted the power:

(e) to appoint or employ such other officers, agents, attorneys, engineers, and employees as it may require for the performance of its duties and to fix and determine their qualifications, duties, compensation, pensions, terms of office and all other conditions and terms of employment and retention.

Del. Code Ann. tit. 17, § 1701. Under this power, the DRBA promulgated the terms and conditions of employment, including termination procedures, in its Personnel Manual (the "Manual"). (D.I. 8 at 8.)  The Manual provides that permanent employees – those employed for more than 12 months – may not be removed from their position "except for good and sufficient cause or reason." (D.I. 8, Appx. at A4.)  The manual provides examples of "good and sufficient cause" including: violating any rules or regulations prescribed by the DRBA, conduct which is prejudicial to the DRBA or the public interest, violating any of the penal laws of Delaware or New Jersey, unauthorized use of the DRBA's property or equipment, and dishonesty in any form.  (Id. at A4-5.)

2

Section XX of the Manual sets forth the procedures for a post-termination hearing. (Id. at A9-10.) Specifically, Section XX provides permanent employees with the right to a post-termination hearing within 21 days after receiving a hearing request. (Id. at A9.) Section XX also addresses the composition of the hearing panel, noting that "[t]he hearing shall be conducted by a Personnel Committee, consisting of three (3) persons drawn from the Chief Operating Officer, the Director of Bridge Operations, the Director of Ferry Operations, the Director of Airport Operations or the Police Administrator as the case may be and the Director of Engineering and the Director of Human Resources." (Id.)

### B.    The Plaintiffs and the Investigation Leading to Their Terminations[1]

Coles began his employment with the DRBA as a casual seasonal employee in 1994 and became a permanent employee in 1999. (D.I. 1 ¶ 9.) In 2004, Coles was promoted to the position of Senior Airport Manager and served in this position until he was terminated by the DRBA on June 16, 2008. (Id. ¶¶ 9-10.) Petty-Judkins was hired as the EEO/Recruitment Manager at the DRBA on August 18, 2003, and remained in that position until her termination on June 16, 2008. (D.I. 8 at 5.)

In April 2008, the DRBA began investigating the plaintiffs regarding allegations made by another employee that Coles had created false airport badges for Petty-Judkins and another DRBA employee. (D.I. 8, Appx. at A16.) More specifically, on April 2, 2008, Ronald Riley ("Riley") submitted an affidavit to counsel for the DRBA in a then-pending lawsuit filed by DRBA employee Howard Moon ("Moon"), *Moon v. Del. River & Bay Auth.*, 05-261-GMS/07-358-GMS (D. Del.).[2]

---

[1] Most of the facts regarding the investigation leading to the plaintiffs' terminations are taken from the Investigation Report, as the plaintiffs state that the subject of the investigation became known to them only upon their terminations.

[2] Riley also filed several lawsuits against the DRBA in the District of Delaware.

3

(Id. at A17.) Riley's affidavit stated that Coles attempted to make him create an airport badge for Petty-Judkins in September or October, 2007, and that he refused. (Id.) Riley's affidavit further stated that Coles then created an airport badge for Petty-Judkins, faxed a copy of it to a Yourtravelbiz.com ("YTB") representative,[3] shredded both the photocopy and the badge, and deleted the badge from the badging system. (Id.)

On April 2, 2008, Petty-Judkins testified at deposition in the *Moon* cases. (Id.) Counsel for the DRBA questioned Petty-Judkins regarding her membership in YTB, and whether Coles created an airport badge so that she could receive a discount membership in YTB. (Id. at A17.) Petty-Judkins admitted that she was a member of YTB, but denied any knowledge of an airport badge having been created in her name. (Id.)

On April 15, 2008, the DRBA retained attorneys from Wolf Block LLP ("Special Counsel") to investigate the allegations regarding the improperly-created airport badge. Special Counsel reviewed documents, interviewed 11 witnesses, and visited the New Castle County Airport, before issuing a 37-page report (the "Investigation Report").

On April 28, 2008, the DRBA placed Coles and Petty-Judkins on a paid leave of absence pending completion of the ongoing investigation. (Id. at A12-A13.) James Walls ("Walls"), the Chief Operations Officer of the DRBA, made that decision. (Id. at A181-A182.) According to Walls, he made the decision because of the seriousness of the matters under investigation, and also

---

[3] YTB is a travel agency business. (D.I. 8, Appx. at A48.) Individuals sign up to be travel agents and pay a $49.95 fee, as well as an initial fee of $400-$500. (Id.) In September 2007, YTB held a sign-up promotion for members of the travel industry, during which it waived the initial fee. (Id.)

4

because of evidence suggesting that Coles had attempted to tamper with records related to the investigation. (Id.)

On May 27, 2008, Special Counsel issued the Investigation Report. (Id. at A14-A52.) The Investigation Report concluded that the person who created the badges (potentially Coles or Riley) could be charged with criminal violations. (Id. at A46-A48.) The report further concluded that, although Petty-Judkins did not create her badge, she knew that a badge was created in her name, despite her denials. (Id. at A50.) Finally, the Investigation Report concluded that Coles either participated in, or was aware of, the creation of the badge for Petty-Judkins. (Id. at A50-A52.)

On June 6, 2008, Walls met with Coles and Petty-Judkins. (Id. at A183.) At these meetings, Walls informed the plaintiffs that the DRBA's investigation into the creation of false airport badges was near its conclusion and extended them the opportunity to provide any additional information that should be considered part of the final determination. (Id.) Following the meetings, Walls concluded that termination was the appropriate disciplinary action for both of Coles and Petty-Judkins.

## C.     The Plaintiffs' Terminations and Their Filing of the Present Action

On June 17, 2008, Walls sent letters to the plaintiffs to notify them of his termination decision. (Id. at A159-A162.) On June 19, 2008, both Coles and Petty-Judkins requested post-termination hearings, pursuant to the procedures set forth in the Manual. (Id. at A166-A167.) The DRBA responded, advising that the hearings would take place in late October due to various scheduling conflicts. (Id. at A168.) On July 14, 2008, the DRBA mailed letters to the plaintiffs, setting their hearing dates for October 22, 2008 and October 23, 2008. (Id. at A169-A170.)

On September 30, 2008, the plaintiffs filed a complaint seeking injunctive relief. (D.I. 1.) On that same date, the plaintiffs filed the motion for injunctive relief that is presently before the

court. In response to the plaintiffs' filing, the DRBA agreed to stay the post-termination hearings pending the court's resolution of the plaintiffs' request for a preliminary injunction.

## III. DISCUSSION

Injunctive relief is "an extraordinary remedy, which should be granted only in limited circumstances." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) (internal citation omitted). In order to obtain a preliminary injunction, the moving party "must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if the relief is not granted."[4] *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987) (citing *Freixenet, S.A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 151 (3d Cir. 1984)) (emphasis in original). "Thus, a failure by the moving party to satisfy these prerequisites . . . must necessarily result in the denial of a preliminary injunction." *In re Arthur Treachers Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982). The court addresses each of these prerequisites in turn.

### A. Likelihood of Success on the Merits of a Due Process Claim

The plaintiffs allege a number of due process violations in their complaint. As previously noted, however, the plaintiffs limit their request for injunctive relief to 2 of the alleged due process violations: (1) their right to a neutral decision maker, and (2) their right to further information in order to present evidence at their post-termination hearings.

In order to allege a due process violation in connection with termination from employment, the plaintiffs must establish that they had a constitutionally protected property interest in their

---

[4] The court also "should take into account, when they are relevant, . . . the possibility of harm to other interested persons from the grant or denial of the injunction, and . . . the public interest." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 992 F.2d 797, 800 (3d Cir. 1989). Neither the plaintiffs nor the DRBA argue that these factors are relevant to the motion presently before the court. Thus, the court does not consider them in its analysis.

6

continued employment with the DRBA. Public employees who can only be terminated for cause have been deemed to possess constitutionally protected property interests in their continued employment. *See Richardson v. Felix*, 856 F.2d 505, 509 (3d Cir. 1988). Here, the DRBA Manual provides that permanent employees may not be removed from their positions except for good cause.

Accordingly, the Manual creates a constitutionally protected property interest in continued employment for permanent DRBA employees like Coles and Petty-Judkins. The court now turns to the plaintiffs' alleged due process violations.

1.    The Composition of the Hearing Panel

The plaintiffs first argue that they will be denied post-termination due process, because three of the DRBA's managers will comprise the hearing panel. According to the plaintiffs, these managers are not neutral decision makers. The court disagrees for several reasons.[5]

First, while the plaintiffs are entitled to unbiased and impartial hearing officers, *see Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975), courts have consistently held that a board is not *per se* biased simply because it performs the twin functions of investigation and adjudication. *Id.* at 47; *Matter of Seidman*, 37 F.3d 911 (3d Cir. 1994) (finding that due process was not denied absent a showing of actual bias or risk of bias when a director had the ability to authorize the investigation, determine whether charges should be brought, issue notice of the charges, and decide the charges as to law and fact); *Walls v. City of Milford*, 938 F. Supp. 1218 (D. Del. 1996) (finding no evidence in the record to demonstrate actual bias or likelihood of bias on the part of the city manager, who initially

_____

[5] As a preliminary matter, the DRBA has represented in its briefing to the court that Colonel John McCarnan, Police Administrator at the DRBA, is the only hearing officer whose participation in the three member panel is finalized. (See D.I. 8 at 18.) Thus, the court reasonably could conclude that the plaintiffs' motion is not yet ripe.

7

investigated the plaintiff and subsequently served as the ultimate decision maker). "Rather, there

is a strong presumption of impartiality which is not lightly rebutted, and only in 'the most extreme

cases' will it be overcome." *Walls*, 938 F. Supp. at 1224 (quoting *Aetna Life Ins. Co. v. Lavoie*, 475

U.S. 813 (1986)); *Withrow*, 421 U.S. at 47 ("The contention that the combination of investigative

and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative

adjudication . . . must overcome a presumption of honesty and integrity in those serving as

adjudicators."). As the court in *Walls* aptly noted:

> *Withrow* [*v. Larkin*] and its progeny clearly dictate the requirements of due process
> with respect to challenges to post-termination review procedures, and stand for the
> proposition that the presumption of impartiality is not lightly rebutted. The
> combination of roles of investigator and decisionmaker with respect to suspension
> and termination does not give rise [to] a constitutional violation, absent evidence of
> actual bias or likelihood of bias.

938 F. Supp. at 1226.

In the present case, the plaintiffs do not argue – much less present any evidence regarding

– actual bias or a likelihood of bias on the part of Colonel McCarnan – the only hearing officer

whose participation in the three member panel is finalized. To the contrary, the plaintiffs merely

assert, with no support, that the entire hearing panel will be biased because McCarnan had some

involvement in their investigation. The plaintiffs' bald assertion, however, is not enough to rebut

the heavy presumption of impartiality of the three member panel. Accordingly, the plaintiffs have

not demonstrated a likelihood of success on the merits regarding the composition of the hearing

panel.

8

2.    The Plaintiffs' Request for Documents

The plaintiffs next argue that they have been denied post-termination due process because the DRBA has not provided certain information that stems from the Investigation Report. According to the plaintiffs, "although some courts have found that there is a right of discovery, . . . [their] remedy falls far short from a request for discovery." (D.I. 15 at 16.) The court finds the plaintiffs' argument unavailing.

First, the plaintiffs' argument regarding the right to discovery in administrative proceedings appears to contradict the well-settled law that parties to administrative proceedings are not entitled to pre-trial discovery as a matter of constitutional right.[6] *NLRB v. Interboro Contractors, Inc.*, 432 F.2d 854, 857-58 (2d Cir. 1970); *see, e.g., Kelly v. U.S. EPA*, 203 F.3d 519, 523 (7th Cir. 2000) ("there is no constitutional right to pretrial discovery in administrative proceedings"); *Kropat v. FAA*, 162 F.3d 129, 133 (D.C. Cir. 1998) (pre-hearing discovery need not be provided to satisfy procedural due process in connection with a post-suspension arbitration hearing); *Silverman v. Commodity Futures Trading Comm'n*, 549 F.2d 28, 33 (7th Cir. 1977) ("There is no basic constitutional right to pretrial discovery in administrative proceedings."). Moreover, the court is not willing to accept the plaintiffs' characterization of their requests for information as "fall[ing] far short from a request for discovery." (D.I. 15 at 16.) The plaintiffs' requests for information, which are attached to their complaint, detail 28 separate categories of documentation to "be provided promptly (on or before September 15[, 2008]) so that . . . [they] may have an adequate opportunity to defend themselves at the hearing scheduled in October [2008]." (D.I. 1, Ex. 4 at 2.) Having considered the nature of the

---

[6] It is noteworthy that the plaintiffs cite no authority for their proposition that some courts have found a right of discovery.

requests, the court finds that they are typical of the discovery requests parties propound in a civil action.[7] The court, therefore, concludes that the plaintiffs have no constitutional right to the requested information. As a result, the plaintiffs have failed to demonstrate a likelihood of success on the merits regarding their request for documents.

## B.   Irreparable Harm

The plaintiffs next contend that they have demonstrated irreparable harm. In order to meet the irreparable harm requirement, a plaintiff "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co.*, 882 F.2d at 801 (citations omitted). This is not an easy burden, as the Third Circuit has emphasized that "the injury must be of a peculiar nature, so that compensation in money cannot atone for it." *Morton*, 822 F.2d at 372 (citation and internal quotation omitted). Indeed, in *Morton*, the Third Circuit noted "[although we are not insensitive to the financial distress suffered by employees whose wages have been terminated, we do not believe that loss of income alone constitutes irreparable harm." *Id.* The Supreme Court also has addressed the issue of irreparable harm in the context of termination, observing that:

---

[7] Examples of the plaintiffs' requests for information include: (1) All email correspondence between Stephen Williams, Walls, Mike Scanlon, James Johnson, Gerry DiNicola Owens, Ben Clendaniel and Riley as such emails pertain to the investigation of Coles and Petty-Judkins; (2) All email correspondence between Mike Scanlon and Coles from September 1, 2007 until Coles' termination; (3) Any and all correspondence sent to the Attorney General's Office either by DRBA officials or by Special Counsel with regard to Coles and Petty-Judkins; (4) All written correspondence from employees alleging harassment by Riley and Moon that were Sent to Walls; and (5) A list of representation of DRBA by Special Counsel and her law firm by type of work and date of work. (See D.I. 1, Ex. 4 at 2-4.)

an insufficiency of savings or difficulties in immediately obtaining other employment - external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself - will not support a finding of irreparable injury, however severely they may affect a particular individual.

*Sampson v. Murray*, 415 U.S. 61, 92 n. 68 (1974).

In the present case, the plaintiffs contend that they: have suffered devastating blows to their reputations in the fields in which they work, cannot find any employment in the fields in which they work, have suffered humiliation and slander in the community, have relied unfairly upon their families for financial and emotional support, and have experienced mental anguish as a result of their terminations. (D.I. 15 at 15-16.) The plaintiffs alleged injuries are substantially similar to those alleged by the plaintiffs in both *Morton* and *Sampson*, namely, injury to reputation and other injuries that are extant with a termination from employment. Thus, the plaintiffs' assertions do not establish the kind of injury necessary for the court to use its injunctive power. In other words, the plaintiffs have failed to allege an injury which could not adequately be remedied by monetary damages and have, therefore, failed to show irreparable harm. Accordingly, the court will deny the plaintiffs' motion for a preliminary injunction.

Dated: January 29, 2010

CHIEF, UNITED STATES DISTRICT JUDGE

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ALEXANDER E. COLES, III and CONSUELA PETTY-JUDKINS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C. A. No. 08-636 (GMS) |
| DELAWARE RIVER AND BAY AUTHORITY, | ) ) ) | |
| Defendant. | ) ) ) | |

## **ORDER**

For the reasons stated in the courts Memorandum of this same date, IT IS HEREBY

ORDERED that:

1.    The plaintiffs' Motion for Injunctive Relief (D.I. 3) is DENIED.

2.    The Clerk of Court is ordered to close this case.

Dated: January 2̱9̱, 2010

_____
CHIEF, UNITED STATES DISTRICT JUDGE